1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

WESTERN DISTRICT OF WASHINGTON

8

AT TACOMA

9

AFRODITA ASANACHESCU, individually, )
and CRISTIAN C. ASANACHESCU, )
individually and as personal representative of )
the ESTATE OF MARIUS CRISTIAN )
ASANACHESCU, deceased, )

Civil Action No.

COMPLAINT
(Deprivation of Civil Rights)

    Plaintiffs, )

        v. )

JURY DEMAND

CLARK COUNTY, a municipal corporation, )
CONMED, INC., a Maryland corporation, )
GARRY E. LUCAS, JACKIE M. WEBSTER, )
NEAL A. KARLSEN, PAUL E. FLORES, )
RANDAL J. TANGEN, ERIC L. )
BJORKMAN, ELISSA M. BLACK, JAMES )
M. BURNS, KENT R. CARROLL, DANIEL )
R. CLUZEL, LUKE A. HATCHER , )
CHERYL J. TAYLOR, DANIEL M. )
GORECKI, MD, JAMES E. DOUGLAS, MD, )
NEAL J. RENDLEMAN, MD, KARIN M. )
PREST, JULIE R. WEIGAND, YULIYA A. )
LEONTYUK, HEIDI E. RICHARDS, KELLE )
J. PRICE and MARITZA D. HERNANDEZ, )

    Defendants. )
_____ )

COMPLAINT - 1

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

**Table of Contents**

I.   INTRODUCTION ........................................................................................... 3

II.   JURISDICTION AND VENUE ................................................................... 4

III.   PARTIES ....................................................................................................... 4

IV.   FACTUAL ALLEGATIONS ....................................................................... 9

   A.  Monday, January 30, 2012 (Events at Booking)...................................... 9

   B.  Thursday, February 2, 2012 (Request for Mental Health Treatment; Self-Harmful Behavior; Use of Pro-Straint Chair) ...................................................... 10

   C.  Saturday, February 4, 2012 (Revocation of Visiting Privileges)........................ 15

   D.  Monday, February 6, 2012 (Further Self-Harmful Behavior; Use of Pro-Straint Chair).... 16

   E.  Tuesday, February 7, 2012 (Further Self-Harmful Behavior; Use of Pro-Straint Chair; Evaluation by Psychiatrist) .............................................................. 18

   F.  Wednesday, February 8, 2012 (Further Self-Harmful Behavior; Use of Pro-Straint Chair)19

   G.  Thursday, February 9, 2012 (Further Self-Harmful Behavior; Use of Pro-Straint Chair) .. 21

   H.  Friday, February 10, 2012 (Further Self-Harmful Behavior; Restraint Asphyxiation) ....... 29

   I.  The Policies, Practices and Customs of Clark County, Conmed, Inc. and Their Respective Officials That at Least in Part Caused Asanachescu's Death ............................................. 33

V.   FIRST CLAIM FOR RELIEF (Excessive Force)............................................... 37

VI.   SECOND CLAIM FOR RELIEF(Unreasonable Denial of Mental Health Care) ............... 38

VII.   THIRD CLAIM FOR RELIEF (Punishment of Detainee) .................................. 40

VIII. FOURTH CLAIM FOR RELIEF(Unreasonable Conduct and/or Conduct So Arbitrary it Shocks the Conscience) ........................................................ 42

IX.   FIFTH CLAIM FOR RELIEF (Deprivation of Equal Protection Rights).......................... 43

COMPLAINT - 2

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

COME NOW plaintiffs, by and through their attorneys of record, and complain and allege as follows:

## I. INTRODUCTION

Marius Asanachescu ("Asanachescu"), age 28 years, suffered from Schizoaffective Disorder, Bipolar Type, which mental illness had in the past caused a behavioral risk to himself and others. However, his illness was well compensated during recent years while he was compliant with treatment and medication, in particular Clozaril (clozapine), which had proven effective. During January 2012, Asanachescu's medication compliance became sporadic and irregular, and his behavior caused his family concern. When he threatened his brother, the Vancouver Police were called, in hopes that Asanachescu would receive mental health treatment that had proven effective in the past. He was taken to the Clark County Jail ("CCJ") where he was charged and ordered transported to Western State Hospital ("WSH") for psychiatric evaluation.

From the time of his booking at the CCJ on January 30, 2012, forward and while awaiting transport to WSH, defendants were deliberately indifferent to Asanachescu's mental health care and medication needs, including Clozaril, which he was never provided. His progressive decompensation over 12 days of deliberate indifference and confinement resulted in behavior harmful to himself, which behavior was met by CCJ personnel with the repeated use of physical force and restraints, culminating on February 10, 2012, when defendant custody officers employed excessive and deadly force, causing Asanachescu's death by mechanical asphyxiation.

This civil rights action is brought against defendants by Cristian Asanachescu, as Asanachescu's father and personal representative of his estate, and Asanachescu's mother, Afrodita Asanachescu. Plaintiffs seek damages to compensate for losses arising from Asanachescu's needless suffering and death, together with costs, expenses and attorney fees against all defendants. Plaintiffs also seek punitive damages against individual defendants for the oppressive and reckless conduct that contributed to Asanachescu's death.

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

## II.  JURISDICTION AND VENUE

1.      This action arises under 42 USC § 1983 for deprivation of plaintiffs' civil rights. This court has jurisdiction pursuant to 28 USC §§ 1331 and 1343.

2.      The claims asserted arose in Clark County, Washington. Venue is proper pursuant to 28 USC § 1391(b).

## III.  PARTIES

3.      Plaintiff Cristian Asanachescu is Marius Asanachescu's surviving father, and personal representative of the Estate of Marius Asanachescu.

4.      Plaintiff Afrodita Asanachescu is Asanachescu's surviving mother.

5.      At all material times, defendant Clark County ("Clark County") was a municipal corporation organized under the laws of the State of Washington ("Washington"), which by and through the Clark County Sheriff's Office ("CCSO"), operated, managed and controlled the Clark County Jail ("CCJ") and employed, engaged and/or contracted with the remaining named defendants. Clark County is a public body responsible under state law for the acts and omissions of its employees, officials and contractors, including those whose conduct is at issue. At all material times, Clark County received federal funds.

6.      At all material times, defendant Garry E. Lucas ("Sheriff Lucas") was the Sheriff of Clark County, acting within the course and scope of his employment. Regarding policy and training matters material to the operation of the CCJ, Sheriff Lucas had policy making authority. He is being sued in his individual and official capacity.

7.      At all material times, defendant Jackie M. Webster ("Chief Webster") was employed by Clark County as the Chief Deputy of the CCJ, whose duties and responsibilities included directing, managing and supervising all programs and activities at the CCJ. At all material times, Chief Webster was acting within the course and scope of her employment. Regarding policy and training matters material to the operation of the CCJ, Chief Webster had policy making authority. She is being sued in her individual and official capacity.

8.      At all material times, defendants Neal A. Karlsen ("Sgt. Karlsen"), Paul E. Flores ("Sgt. Flores") and Randal J. Tangen ("Sgt. Tangen") were employed by Clark County as

COMPLAINT - 4

sergeants at the CCJ, whose duties and responsibilities included training and supervising correction officers, supervising inmate routine, maintaining order, and authorizing medical and mental health care for inmates. At all material times, Sgt. Karlsen, Sgt. Flores and Sgt. Tangen were acting within the course and scope of their employment. They are being sued in their individual capacities only.

9.     At all material times, defendants Eric L. Bjorkman ("CO Bjorkman"), Elissa M. Black ("CO Black"), James M. Burns ("CO Burns"), Kent R. Carroll ("CO Carroll"), Daniel R. Cluzel ("CO Cluzel") and Luke A. Hatcher ("CO Hatcher") were employed by Clark County as custody officers at the CCJ, whose duties and responsibilities included providing for the custody and care of inmates, including monitoring inmates' mental and physical health. At all material times, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel and CO Hatcher were acting within the course and scope of their employment. They are being sued in their individual capacities only.

10.    At all material times, defendant Conmed, Inc. ("Conmed") was a Maryland corporation, which had an agreement ("Agreement") with Clark County, by and through Sheriff Lucas, to provide medical and mental health care to inmates at the CCJ. At all material times, Conmed and its employees and/or contractors named herein were performing a public function. The Agreement provided for comprehensive health care services at the CCJ "that meet or exceed constitutional and community standards and that meet, at a minimum, the Standards of the National Commission on Correctional Health care ["NCCHC"], the American Correctional Association ["ACA"] and all applicable Washington Jail Standards." The Agreement further provided for mental health services at the CCJ, including but not limited to:

   a.     An agreed level of mental health staffing, including psychiatrist, physician designee, mental health coordinator, psychiatric advanced registered nurse practitioner and mental health counselors;

   b.     Medical and mental health screenings by a qualified health care professional upon admission to the jail;

COMPLAINT - 5

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

c.     Training for custodial staff in the identification of inmates demonstrating acute psychological distress;

d.     Timely psychiatric evaluation and/or treatment by a qualified mental health professional;

e.     Use of temporary restraint devices only for medical and mental health reasons, pursuant to physician's orders;

f.     24-hour on-call psychiatric services for inmates experiencing acute psychosis, emotional/cognitive disorder, or other mental health issues;

g.     Involuntary medication of inmates actively engaging in behavior that may cause harm to themselves or others, who meet the criteria for emergency medication; and

h.     Hospitalization of inmates who present an ongoing threat to themselves or others, who meet the criteria for initiation of involuntary hospitalization.

11.    At all material times, defendant Cheryl J. Taylor ("HSA Taylor") was employed by and/or contracted with Conmed as Health Service Administrator at the CCJ, whose duties and responsibilities included delivery of Conmed's contract services, supervising medical and mental health staff, ensuring staffing was maintained consistent with contract requirements and investigating and responding to inmate grievances. At all material times, HSA Taylor was acting within the course and scope of her employment. Regarding policy and training matters material to health care services at the CCJ, HSA Taylor had policy making authority. She is being sued in her individual and official capacity.

12.    At all material times, defendant Daniel M. Gorecki, MD ("Dr. Gorecki") was licensed in Washington as a physician and employed by and/or contracted with Conmed as Medical Director at the CCJ, whose duties and responsibilities included ensuring all activities of the CCJ medical unit were conducted in accordance with American Medical Association, NCCHC and ACA standards, attending inmates and providing emergency care and referrals as

COMPLAINT - 6

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

requested. At all material times, Dr. Gorecki was acting within the course and scope of his employment. Regarding policy and training matters material to health care services at the CCJ, Dr. Gorecki had policy making authority. He is being sued in his individual and official capacity.

13.     At all material times, defendant James E. Douglas, MD ("Dr. Douglas") was licensed in Washington as a physician and employed by and/or contracted with Conmed as the staff psychiatrist at the CCJ, whose duties and responsibilities included evaluating the need for and providing psychiatric treatment, communication with medical and correction staff regarding inmate care, timely follow-up of inmates in acute need, on-call availability and coordinating involuntary medication and emergency hospitalization of inmates. At all material times, Dr. Douglas was acting within the course and scope of his employment and/or agency. He is being sued in his individual capacity only.

14.     At all material times, defendant Neal J. Rendleman, MD ("Dr. Rendleman") was licensed in Washington as a physician and employed by and/or contracted with Conmed as a physician and prescribing designee at the CCJ, whose duties and responsibilities included evaluating requests for psychiatric service and determining the need for immediate treatment. At all material times, Dr. Rendleman was acting within the course and scope of his employment and/or agency. He is being sued in his individual capacity only.

15.     At all material times, defendant Yuliya A. Leontyuk ("DON Leontyuk") was licensed in Washington as a registered nurse and employed by and/or contracted with Conmed as Director of Nursing at the CCJ, whose duties and responsibilities included directing nursing staff and assistants in compliance with state and federal standards, policies, guidelines and requirements, performing nursing assessments pursuant to defined protocols, assuring immediate inmate health care needs are met and coordinating appropriate follow-up care. At all material times, DON Leontyuk was acting within the course and scope of her employment and/or agency. She is being sued in her individual capacity only.

16.     At all material times, defendant Heidi E. Richards ("RN Richards") and Kelle J. Price ("RN Price") were licensed in Washington as registered nurses and employed by and/or contracted with Conmed at the CCJ, whose duties and responsibilities included performing

COMPLAINT - 7

nursing assessments pursuant to defined protocols, assuring immediate inmate health care needs are met and coordinating appropriate follow-up care. At all material times, RN Richards and RN Price were acting within the course and scope of their employment and/or agency. They are being sued in their individual capacities only.

17.     At all material times, defendant Karin M. Prest ("SW Prest") was licensed in Washington as a Social Worker, and defendant Julie R. Weigand ("MHC Weigand") was licensed in Washington as a Mental Health Counselor. At all material times SW Prest and MHC Weigand were employed by and/or contracted with Conmed as mental health professionals at the CCJ, whose duties and responsibilities included assisting the Mental Health Coordinator in managing mental health services at the CCJ, performing mental health assessments on inmates with a history of mental illness, providing crisis intervention and participating in treatment management of inmates with acute mental illness. At all material times, SW Prest and MHC Weigand were acting within the course and scope of their employment and/or agency. They are being sued in their individual capacities only.

18.     At all material times, defendant Maritza D. Hernandez ("CNA Hernandez") was licensed in Washington as a Certified Nursing Assistant and employed by and/or contracted with Conmed at the CCJ, whose duties and responsibilities included performing medical and mental health screenings upon admission. At all material times, CNA Hernandez was acting within the course and scope of her employment and/or agency. She is being sued in her individual capacity only.

19.     At all material times, all defendants, including those employed by and/or contracted with Conmed, acted under the color of law and within the course and scope of their employment, agency, and/or contract with Clark County.

COMPLAINT - 8

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

# IV.  FACTUAL ALLEGATIONS

### A.    Monday, January 30, 2012 (Events at Booking)

20.    On January 30, 2012, at approximately 11:40 a.m., Asanachescu was booked into the CCJ on an assault charge. The booking officer, Carol Baldwin ("CO Baldwin"), noted Asanachescu had attempted suicide, had mental health issues and was "bi polor [sic] off meds." CO Baldwin placed Asanachescu in administrative segregation, until he could be seen by mental health, noting:

> As a precaution, you are being placed on administrative segregation as a safety and security risk. We need to ensure that you are not a danger to yourself or anyone else. It has been three years since you were here last and you have reported that you are not on your mental health medication. I have asked mental health to assess you. I am hoping that you will work with them and get back on your medication.

21.    At approximately 12:25 p.m., CNA Hernandez completed a *Mental Health Screening* for Asanachescu. Despite the entry by CO Baldwin that Asanachescu needed to get back on his mental health medication, and Asanachescu's extensive CCJ medical record documenting chronic mental illness, CNA Hernandez made the following notations: i) not on psychiatric medications; ii) no current mental health complaints; iii) no history of taking psychiatric medications; iv) no history of psychiatric hospitalization; and, v) no history of significant physical or emotional trauma. CNA Hernandez concluded the *Mental Health Screening* by clearing Asanachescu for general population.

22.    Approximately five minutes later, at 12:30 p.m., CNA Hernandez completed an *Intake Medical Screening* for Asanachescu, on which CNA Hernandez made the following notations: i) no previous CCJ health record; ii) no current prescription medications; and, iii) no medical problems the CCJ should know about. While CNA Hernandez indicated that Asanachescu had been in the CCJ before, she incorrectly noted that he had no previous health record or documentation of "any medical or mental health alerts from previous incarcerations."

23.    At approximately 5:40 p.m., MHC Weigand reviewed CNA Hernandez's *Mental Health Screening* and determined "[n]o further evaluation necessary," designating Asanachescu "[c]leared for general population."

COMPLAINT - 9

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

24.     In completing and approving Asanachescu's *Intake Medical Screening* and *Mental Health Screening*, CNA Hernandez and MHC Weigand were deliberately indifferent to Asanachescu's serious medical and mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

      a.     By failing to obtain and/or review Asanachescu's CCJ medical and mental health record;

      b.     By failing to obtain accurate information regarding Asanachescu's medical and mental health history;

      c.     By failing to obtain prescription information for Asanachescu's current psychotropic medication;

      d.     By failing to refer Asanachescu to a qualified mental health professional for further evaluation; and

      e.     By clearing Asanachescu for general population.

**B.     Thursday, February 2, 2012 (Request for Mental Health Treatment; Self-Harmful Behavior; Use of Pro-Straint Chair)**

25.     On February 2, 2012, at approximately 10:20 a.m., Jason Suter, a mental health counselor at Lifeline Connections ("Lifeline"), a community mental health clinic, which had been treating Asanachescu's schizoaffective disorder for several years, attempted to meet with Asanachescu at the CCJ to evaluate his mental health condition and report back to Asanachescu's mental health provider, Catherine Owen, ARNP ("Owen"), regarding his need for medication. He was informed by CCJ staff Asanachescu was not available to be seen.

26.     At approximately 10:30 a.m., Asanachescu requested mental health services and was taken by custody officers to the jail medical clinic.

27.     At approximately 10:50 a.m., Asanachescu was seen by SW Prest in the medical clinic. Asanachescu "was clear in that he was unsure he was safe [and] was sure that he had made it clear with the other inmates that he was dominant." SW Prest observed he "began to move his lips silently, then looked up as if there were something there" and turned his head often . . . to 'listen.'" When SW Prest asked, Asanachescu "denied there had been 'anything there,'

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

although his "eyes would open widely and take on an intensity at times that seemed to be threatening but his tone was calm overall." SW Prest noted "inmate appears to be psychotic" and and noted in Asanachescu's medical record, "[r]eferral to psychiatry."

28.     As described above, SW Prest was deliberately indifferent to Asanachescu's serious mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

a.      By failing to obtain and/or review Asanachescu's CCJ medical and mental health record;

b.      By failing to conduct a thorough mental status examination and assessment of danger to self and others, after detecting the presence of psychosis and Asanachescu's statement regarding his safety;

c.      By failing to obtain prescription information for Asanachescu's current psychotropic medication and/or the names and contact information of Asanachescu's current mental health providers;

d.      By failing to consult with a psychiatrist or other qualified mental health professional regarding Asanachescu's symptoms of self-harmful behavior;

e.      By failing to contact a psychiatrist or other qualified mental health professional to provide Asanachescu an immediate psychiatric evaluation; and

f.      By failing to advise custody officers of her impression that Asanachescu was psychotic, and her determination of the need for a psychiatric examination and plan for mental health management.

29.     At approximately 1:50 p.m., Asanachescu told a custody sergeant he was suicidal. In response, Asanachescu was placed in a suicide smock and transferred to a windowless seven foot (7') by eleven foot (11') cell in the booking area, with a drain in the floor which served as a

COMPLAINT - 11

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

toilet, where he spent the last eight days of his life. The cell had no furniture or fixtures, so that Asanachescu had no choice but to sit, lie, sleep or stand on the bare concrete floor – with the exception of those periods when a Pro-Straint chair[1] ("Pro-Straint chair") was brought into the cell for purposes of restraint.

30.    At approximately 2:55 p.m., Jason Suter of Lifeline again attempted to meet with Asanachescu at the CCJ to assess his situation and need for medication. Again, he was informed by CCJ staff Asanachescu was not available to be seen.

31.    At approximately 4:00 p.m., shortly after Asanachescu was placed on suicide watch, Sgt. Karlsen observed Asanachescu engaging in self-injury, the first of many such incidents to occur over the next week. According to Sgt. Karlsen:

> Observed IM Marius Asanachescu naked and lying face down on
> the floor of the cell pounding his forehead on the steel drain cover.
> Blood was smeared on the floor around the drain.

32.    Sgt. Karlsen ordered Asanachescu to remain face down, to be handcuffed and placed in the Pro-Straint chair. Although Asanachescu stayed on the ground, he did not place his hands behind his back. In response Sgt. Karlsen ordered his officers, including CO Black, CO Carroll and CO Cluzel, to shock Asanachescu with a Taser, and forcibly place him in the Pro-Straint chair. Sgt. Karlsen noted that "[t]hroughout the process Asanachescu passively resisted and made statements that did not make any sense."

33.    At approximately 4:10 p.m., DON Leontyuk was called to assess Asanachescu's condition. DON Leontyuk was told Asanachescu had been "banging his head on the metal plate that's used for a toilet," was Tased and put in the Pro-Straint chair. DON Leontyuk checked Asanachescu's vital signs, cleaned and bandaged his self-inflicted head wound, gave him an ice pack and told him to let officers know if his headache did not get better. DON Leontyuk was deliberately indifferent to Asanachescu's serious mental health needs and contributed to the

---

[1]  A large metal chair with belts to restrain an inmate's legs, thighs and chest, and chain style handcuffs to restrain the inmate's hands behind the chair.

COMPLAINT - 12

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

      a.     By failing to evaluate the cause of Asanachescu's self-harmful behavior;

      b.     By failing to consult with a psychiatrist or other qualified mental health professional regarding Asanachescu's symptoms of self-harmful behavior;

      c.     By failing to contact a psychiatrist or other qualified mental health professional to provide Asanachescu an immediate psychiatric evaluation;

      d.     By failing to obtain a physician's order for Asanachescu's restraint in the Pro-Straint chair; and

      e.     By failing to develop a plan with custody staff to address Asanachescu's serious mental health needs.

34.     At approximately 5:45 p.m., Sgt. Karlsen and Sgt. Tangen prepared a "plan of action," for Asanachescu's continued restraint. Based on Asanachescu's statement he wanted "Tangen to 'shoot him'" and that if he was removed from the chair he "would 'kick [Sgt. Tangen's] ass,'" Sgt. Karlsen and Sgt. Tangen determined "Pro-Straint chair continuation required." Sgt. Karlsen's and Sgt. Tangen's plan contained no provision to address Asanachescu's serious mental health needs.

35.     At approximately 6:00 p.m., after restraining Asanachescu in the Pro-Straint chair for two hours, Sgt. Karlsen's shift ended. By restraining Asanachescu in the Pro-Straint chair, as described above, Sgt. Karlsen was deliberately indifferent to Asanachescu's serious mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

      a.     By failing to obtain the assistance of a qualified mental health professional in dealing with Asanachescu's self-harm behavior and inability to comply with custodial directions;

COMPLAINT - 13

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

b.      By use of a Taser as the primary means to enforce

compliance with custodial direction;

c.      By use of the Pro-Straint chair to discipline Asanachescu

for failure to comply with custodial direction, rather than limiting

its use to immediate prevention of self-harmful behavior;

d.      By failing to obtain a physician's order for Asanachescu's

restraint in the Pro-Straint chair; and

e.      By failing to develop a plan with medical staff to address

Asanachescu's serious mental health needs.

36.     At approximately 6:00 p.m., Sgt. Tangen justified Asanachescu's continued restraint in the Pro-Straint chair, because he "refused medical check," "refused toilet" and "refused to answer further questions." Again, Sgt. Tangen made no provision for Asanachescu's serious mental health needs.

37.     At approximately 7:30 p.m., RN Price checked Asanachescu's vital signs, and asked Asanachescu whether he had any mental health complaints. Asanachescu told RN Price, "I don't have a name" and "I refused [sic] to answer any more of your questions." Based on that response, RN Price noted Asanachescu had no mental health complaint. RN Price was deliberately indifferent to Asanachescu's serious mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

a.      By failing to evaluate the cause of Asanachescu's self-

harmful behavior;

b.      By failing to consult with a psychiatrist or other qualified

mental health professional regarding Asanachescu's symptoms of

self-harmful behavior;

c.      By failing to contact a psychiatrist or other qualified mental

health professional to provide Asanachescu an immediate

psychiatric evaluation;

COMPLAINT - 14

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

d.      By failing to obtain a physician's order for Asanachescu's

restraint in the Pro-Straint chair; and

e.      By failing to develop a plan with custody staff to address

Asanachescu's serious mental health needs.

38.     At approximately 7:30 p.m., after Asanachescu had spent approximately three and one-half hours in the Pro-Straint chair, Sgt. Tangen released him based on his assurance he would control his mental illness and "stop hurting himself."

39.     By restraining Asanachescu in the Pro-Straint chair, as described above, Sgt. Tangen was deliberately indifferent to Asanachescu's serious mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

a.      By failing to obtain the assistance of a qualified mental

health professional in dealing with Asanachescu's self-harm

behavior and inability to comply with custodial directions;

b.      By use of the Pro-Straint chair to discipline Asanachescu

for failure to comply with custodial direction, rather than limiting

its use to immediate prevention of self-harmful behavior;

c.      By failing to obtain a physician's order for Asanachescu's

restraint in the Pro-Straint chair; and

d.      By failing to develop a plan with medical staff to address

Asanachescu's serious mental health needs.

**C.      Saturday, February 4, 2012 (Revocation of Visiting Privileges)**

40.     On February 4, 2012, at approximately 8:00 a.m., the CCJ held a disciplinary hearing against Asanachescu for "diversion of jail staff," for an incident which occurred three days before when he was inappropriately placed in general population. Despite SW Prest's determination that "inmate appears to be psychotic," the CCJ did not assign a mental health or other staff member to represent Asanachescu at the hearing, simply noting: "Asanachescu refused to participate in his hearing." Sgt. Tangen approved the maximum sanction imposed by

COMPLAINT - 15

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

the hearing board of a 10-day lockdown and three week loss of visitation, including loss of telephone privileges, despite knowing of and without taking into consideration that the very purpose of Asanachescu's detention in CCJ was to await transfer to WSH for medical determination as to his mental ability to be accountable for his actions and to assist in his defense. Asanachescu was thereby deprived of communication with his support network and family, and effectively placed in solitary confinement while suffering the effects of his mental illness. Sgt. Tangen's actions were in deliberate indifference to Asanachescu's serious mental health needs and contributed to the worsening of his condition and ultimately, tortured death.

**D.     Monday, February 6, 2012 (Further Self-Harmful Behavior; Use of Pro-Straint Chair)**

41.     On February 6, 2012, at approximately 1:45 p.m., Sgt. Flores observed Asanachescu, his mental illness still untreated, "banging his head on the [cell] wall drawing blood." In response, Sgt. Flores ordered his officers to strap Asanachescu into the Pro-Straint chair.

42.     At approximately 2:30 p.m., Kimberly Whitten, a mental health counselor at Lifeline, delivered Asanachescu's prescription for Clozaril from Owen to the CCJ. The prescription was put in Asanachescu's medical file and not filled, without any attempt to verify the prescription with Owen, the prescribing mental health professional.

43.     At approximately 3:00 p.m., after Asanachescu had been strapped in the Pro-Straint chair, DON Leontyuk was asked to see him "because of banging head on wall." DON Leontyuk checked Asanachescu's vital signs and noted the "scab from last time's incident had some blood that was already dried," and that Asanachescu had "a self inflicted [sic] healing bite on left hand." Despite these obvious indications of self-injury, DON Leontyuk was deliberately indifferent to Asanachescu's serious mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

a.     By failing to evaluate the cause of Asanachescu's self-harmful behavior;

COMPLAINT - 16

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

b.      By failing to consult with a psychiatrist or other qualified

mental health professional regarding Asanachescu's symptoms of

self-harmful behavior;

c.      By failing to contact a psychiatrist or other qualified mental

health professional to provide Asanachescu an immediate

psychiatric evaluation;

d.      By failing to obtain a physician's order for Asanachescu's

restraint in the Pro-Straint chair; and

e.      By failing to develop a plan with custody staff to address

Asanachescu's serious mental health needs.

44.     At approximately 4:45 p.m., after Asanachescu had been in the Pro-Straint chair

for three hours, Sgt. Flores justified continued restraint for Asanachescu's symptoms of acute

mental illness, because he "[w]ould not cooperate when spoken to about how he was going to act

if [sic] were to work with him."

45.     At approximately 5:15 p.m., Sgt. Flores removed Asanachescu from the Pro-

Straint chair, as he was "compliant with staff at this time." By placing Asanachescu in the Pro-

Straint chair for approximately three and one-half hours, as described above, Sgt. Flores was

deliberately indifferent to Asanachescu's serious mental health needs and contributed to the

worsening of his condition and ultimately, tortured death, in one or more of the following

particulars:

a.      By failing to obtain the assistance of a qualified mental

health professional in dealing with Asanachescu's self-harm

behavior and inability to comply with custodial directions;

b.      By use of the Pro-Straint chair to discipline Asanachescu

for failure to comply with custodial direction, rather than limiting

its use to immediate prevention of self-harmful behavior;

c.      By failing to obtain a physician's order for Asanachescu's

restraint in the Pro-Straint chair; and

COMPLAINT - 17

Baumgartner, Nelson & Wagner, PLLC          David P. Meyer, PC
112 W 11th St, Ste 150                   621 SW Morrison St, Ste 900
Vancouver, WA 98660-3359                 Portland, OR 97205-3823
Phone: (360) 694-4344                    Phone: (503) 224-1096
wnelson@bnw-law.com                      dpmeyer@meyerlaw.com

d.      By failing to develop a plan with medical staff to address

Asanachescu's serious mental health needs.

**E.      Tuesday, February 7, 2012 (Further Self-Harmful Behavior; Use of Pro-Straint Chair; Evaluation by Psychiatrist)**

46.      On February 7, 2012, at approximately 8:30 a.m., Sgt. Flores observed Asanachescu experiencing another episode of self-harm behavior, "[b]anging head again today drawing blood." In response, Sgt. Flores ordered his officers to strap Asanachescu back into the Pro-Straint chair.

47.      At approximately 10:45 a.m., Dr. Douglas examined Asanachescu and made the following observations:

> Pt. seen in segregation and Pro-Straint chair. Pt. had been banging his head against the wall causing an open wound. Pt. has been extremely violent and self injurious since incarceration. He has long history of Schizoaffective disorder with several previous admissions to WSH. He has been maintained on clozaril in the past but has not had in recent weeks. He has historically decompensated when meds other than clozaril are tried. Pt. currently delusional and fearing that he is going to be killed by officers. He denied any problems and said that all he needed was to read a book.

Dr. Douglas diagnosed Asanachescu with "[s]chizoaffective Disorder-Acute exacerbation off meds," and ordered administration of olanzapine, an in-stock medication, as a bridge until Clozaril could be obtained from Conmed's out-of-state contract pharmacy. Dr. Douglas ordered the first dose of olanzapine to be given by injection, with subsequent doses to be given orally.

48.      As described above, Dr. Douglas was deliberately indifferent to Asanachescu's serious medical and mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

a.      By failing to provide a treatment plan regarding Asanachescu's continued seclusion in the booking area;

b.      By failing to provide an order, including clinical justification, objective and duration, for Asanachescu's continued restraint in the Pro-Straint chair;

c.      By failing to provide a treatment plan to address

COMPLAINT - 18

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

Asanachescu's continued self-harm, agitation, and potential danger
to others; and

d.      By failing to arrange for Clozaril to be supplied promptly
(e.g., through a local pharmacy) rather than through the remote
contract pharmacy and known consequent delay.

49.     At approximately 1:30 p.m., Asanachescu received the olanzapine injection that
Dr. Douglas had prescribed.

50.     At approximately 5:40 p.m., after nine hours in the Pro-Straint chair, Sgt. Flores
allowed Asanachescu to be removed from the chair.

51.     At approximately 9:00 p.m., Asanachescu allegedly refused to voluntarily take the
olanzapine that Dr. Douglas had prescribed, and the medication was not administered.

**F.      Wednesday, February 8, 2012 (Further Self-Harmful Behavior; Use of Pro-Straint Chair)**

52.     On February 8, 2012, at approximately 5:00 a.m., Asanachescu allegedly again
refused to voluntarily take the olanzapine that Dr. Douglas had prescribed, and the medication
was not administered.

53.     At approximately 2:50 p.m., MHC Weigand noted Asanachescu engaged in
further self-injury, "hitting walls of cell." However, she was "not able to have a conversation
with [inmate] due to [behavior] issues." MHC Weigand entered a "psychiatrist request" in the
"tasks" section of Asanachescu's medical record with a note to "[a]ssess [Asanachescu's] mental
health to determine the need for DMHP [Designated Mental Health Professional ("DMHP")]
involvement" for involuntary psychiatric treatment. MHC Weigand was deliberately indifferent
to Asanachescu's serious mental health needs and contributed to the worsening of his condition
and ultimately, tortured death, in one or more of the following particulars:

a.      By failing to evaluate the cause of Asanachescu's self-
harmful behavior;

COMPLAINT - 19

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

b. By failing to consult with a psychiatrist, qualified mental health professional or DMHP regarding Asanachescu's symptoms of acute mental illness;

c. By failing to contact a psychiatrist, qualified mental health professional or DMHP to provide Asanachescu immediate psychiatric care;

d. By failing to obtain a physician's order for Asanachescu's restraint in the Pro-Straint chair; and

e. By failing to develop a plan with custody staff to address Asanachescu's serious mental health needs.

54. At approximately 11:30 p.m., Sergeant Grant Austin ("Sgt. Austin") noted Asanachescu was banging his head in his cell and refusing to stop. According to Sgt. Austin, "[w]hen asked if he wanted to be put in the Pro-Straint chair, he said 'yes,'" and was placed in the chair.

55. At approximately 11:35 p.m., RN Price was called to Asanachescu's cell "for placement of inmate in restraint chair." RN Price noted Asanachescu was "disheaveled [sic], naked, covered in feces and blood, was observed slamming frontal forehead on floor, unable to assess orientation - wont [sic] respond to medical except [with] a head shake - NO (I wont [sic] answer questions), was placed in restraint chair." RN Price checked Asanachescu's vital signs and noted he had "risk for confusion" from slamming his head on the floor and "risk for injury [related to] self destructive behavior." RN Price was deliberately indifferent to Asanachescu's serious mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

a. By failing to evaluate the cause of Asanachescu's self-harmful behavior;

b. By failing to consult with a psychiatrist or other qualified mental health professional regarding Asanachescu's symptoms of self-harmful behavior;

COMPLAINT - 20

Baumgartner, Nelson & Wagner, PLLC
112 W 11ᵗʰ St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

c.      By failing to contact a psychiatrist or other qualified mental
health professional to provide Asanachescu an immediate
psychiatric evaluation;

d.      By failing to obtain a physician's order for Asanachescu's
restraint in the Pro-Straint chair; and

e.      By failing to develop a plan with custody staff to address
Asanachescu's serious mental health needs.

**G.      Thursday, February 9, 2012 (Further Self-Harmful Behavior; Use of Pro-Straint Chair)**

56.     On February 9, 2012, at approximately 1:00 a.m., Sgt. Austin noted Asanachescu "was now compliant" and released him from the Pro-Straint chair, allowing him to walk unrestrained to the shower room. When Sgt. Austin opened the shower room door to check on him, Asanachescu grabbed the door. Sgt. Austin directed a custody officer to strike Asanachescu's hand with her baton until he released the door, and he was locked back in the shower room. Sgt. Austin and Sgt. Tangen then ordered six custody officers to enter the shower room with a shield to restrain Asanachescu and walk him back to his cell.

57.     At approximately 1:30 a.m., Sgt. Austin contacted RN Price regarding Asanachescu's aggressive and self-harm behavior, requesting RN Price contact a qualified mental health professional for evaluation and possible emergency psychotropic medication administration, as RN Price noted:

> Sgt Austin wants a plan iniciated [sic] for possible chemical sedation prn for officer and inmate safety. Inmate is in cell currently and is being observed for self harm. Sgt Austin agrees we can report pt condition to PA/MH in A.M. unless condition declinces [sic]; then we will alert on call MD for tx consultation.

RN Price was deliberately indifferent to Asanachescu's serious mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

a.      By failing to evaluate the cause of Asanachescu's self-harmful behavior;

COMPLAINT - 21

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

b.      By failing to consult with a psychiatrist or other qualified

mental health professional regarding Asanachescu's symptoms of

self-harmful behavior;

c.      By failing to consult with a psychiatrist or other qualified

mental health professional regarding Asanachescu's need for

emergency psychotropic medication;

d.      By failing to contact a psychiatrist or other qualified mental

health professional to provide Asanachescu an immediate

psychiatric evaluation;

e.      By failing to obtain a physician's order for Asanachescu's

restraint in the Pro-Straint chair; and

f.      By failing to develop a plan with custody staff to address

Asanachescu's serious mental health needs.

58.      At approximately 8:00 a.m., Asanachescu allegedly again refused to voluntarily take the olanzapine that Dr. Douglas had prescribed, and the medication was not administered.

59.      At approximately 11:00 a.m., Sgt. Karlsen observed Asanachescu experiencing another episode of self-harm, the fifth such occurrence in the last week, noting: "IM Asanachescu pounded his head on the wall of B9 opening an injury that was from last night causing new damage." Asanachescu was ordered to stop pounding his forehead and put his hands through the food port to be handcuffed or a Taser would be used on him. He complied, "although he was still agitated." Several officers, including CO Black and CO Burns, strapped Asanachescu back into the Pro-Straint chair.

60.      At approximately 12:00 p.m., DON Leontyuk went to Asanachescu's cell "to assess patient because of placing inmate in pro-restraint chair." DON Leontyuk checked Asanachescu's vital signs, noted he was calm, cooperative, able to follow commands. She further noted an "abraision" [sic] in the center of the forehead, but no active bleeding." DON Leontyuk was deliberately indifferent to Asanachescu's serious mental health needs and contributed to the

COMPLAINT - 22

worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

       a.     By failing to evaluate the cause of Asanachescu's self-harmful behavior;

       b.     By failing to consult with a psychiatrist or other qualified mental health professional regarding Asanachescu's symptoms of self-harmful behavior;

       c.     By failing to contact a psychiatrist or other qualified mental health professional to provide Asanachescu an immediate psychiatric evaluation;

       d.     By failing to obtain a physician's order for Asanachescu's restraint in the Pro-Straint chair; and

       e.     By failing to develop a plan with custody staff to address Asanachescu's serious mental health needs.

61.     At approximately 3:50 p.m., after Asanachescu had been restrained for almost five hours, Sergeant Victoria McKenzie ("Sgt. McKenzie") and CO Cluzel removed him from the Pro-Straint chair. Despite the incident the day before, they allowed him to walk unrestrained to the shower room. However, they were "prepared to grab him" when CO Cluzel opened the shower door, and Asanachescu tried to push the door open. CO Cluzel grabbed Asanachescu and threw him to the ground, pushing Sgt. McKenzie against the wall and fracturing her finger. At that point, several other officers, including CO Black, assisted CO Cluzel to forcibly return Asanachescu to the Pro- Straint chair. Sgt. Karlsen justified Asanachescu's continued restraint in the Pro-Straint chair, in response to his still untreated mental illness, "as it seemed likely in his agitated state that he would again begin self destructive behavior if placed unrestrained in a holding cell."

62.     At approximately 4:15 p.m., RN Richards was called to assess Asanachescu's condition. She "[a]rrived to find [Asanachescu] in [the Pro-Straint] chair." Based on RN Richard's observation of "hematoma appox [sic] 80-90 mm on forehead" and assessment of

COMPLAINT - 23

Baumgartner, Nelson & Wagner, PLLC      David P. Meyer, PC
112 W 11th St, Ste 150      621 SW Morrison St, Ste 900
Vancouver, WA 98660-3359      Portland, OR 97205-3823
Phone: (360) 694-4344      Phone: (503) 224-1096
wnelson@bnw-law.com      dpmeyer@meyerlaw.com

"[r]isk for injury," she entered the following plan: "[C]ontinue to restrain per custody protocol." RN Richards was deliberately indifferent to Asanachescu's serious mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

a.      By failing to evaluate the cause of Asanachescu's self-harmful behavior;

b.      By failing to consult with a psychiatrist or other qualified mental health professional regarding Asanachescu's symptoms of self-harmful behavior;

c.      By failing to contact a psychiatrist or other qualified mental health professional to provide Asanachescu an immediate psychiatric evaluation;

d.      By failing to obtain a physician's order for Asanachescu's restraint in the Pro-Straint chair; and

e.      By failing to develop a plan with custody staff to address Asanachescu's serious mental health needs.

63.      At approximately 5:00 p.m., after Asanachescu had been in the Pro-Straint chair for six hours, Sgt. Karlsen justified Asanachescu's continued restraint, to allow CCSO Deputy Hafer to interrogate Asanachescu for possible criminal charges related to Sgt. McKenzie's injury earlier that afternoon. Before questioning Asanachescu, Deputy Hafer made the following observations regarding Asanachescu's condition:

I entered Marius' holding cell, where he was restrained in a full body restraint chair. Marius was not wearing any clothing, and had a spit hood pulled over his head. He subtlety [sic] jerked his head forward and backward as he repeatedly whispered things to himself.

After reading Asanachescu the Miranda rights, Deputy Hafer proceeded to interrogate Asanachescu, as reflected in Deputy Hafer's report:

Marius had a large bloody spot on the front side of his head. It was just about the forehead, right in the area his hair line. I asked Marius how he'd received the injury to his head. Marius said

COMPLAINT - 24

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

something to the effect of, 'yeah, I got it from fighting people.' Marius diverted topics and looked over at my empty gun holster. Marius started to get agitated as he said 'Can you just hand me your gun, or shoot me with it? Maybe we can wrestle around for a bit then you could shoot me.'

64.     At approximately 6:00 p.m., after restraining Asanachescu in the Pro-Straint chair for seven hours, Sgt. Karlsen's shift ended. By restraining Asanachescu in the Pro-Straint chair, as described above, Sgt. Karlsen was deliberately indifferent to Asanachescu's serious mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

a.     By failing to obtain the assistance of a qualified mental health professional in dealing with Asanachescu's self-harm behavior and inability to comply with custodial directions;

b.     By use of a Taser as the primary means to enforce compliance with custodial direction;

c.     By use of the Pro-Straint chair to discipline Asanachescu for failure to comply with custodial direction, rather than limiting its use to immediate prevention of self-harmful behavior;

d.     By failing to obtain a physician's order for Asanachescu's restraint in the Pro-Straint chair; and

e.     By failing to develop a plan with medical staff to address Asanachescu's serious mental health needs.

65.     At approximately 6:00 p.m., Sgt. Tangen justified Asanachescu's continued restraint in the Pro-Straint chair, as he was "struggling against restraints, demanding to be removed" and exhibiting "[v]iolent, erratic behavior." Sgt. Tangen further noted, "[i]nmate not safe for medical eval."

66.     At approximately 6:30 p.m., RN Price contacted Dr. Rendleman, the physician designee, to confer regarding Asanachescu's evident need for psychiatric care. Dr. Rendleman informed RN Price that Asanachescu was not his patient and he would have to wait for Dr. Douglas to see him the next day. Dr. Rendleman offered no treatment plan other than to follow Dr. Douglas' order for olanzapine, which Asanachescu had refused to take for the last two days.

COMPLAINT - 25

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

67.     As described above, Dr. Rendleman was deliberately indifferent to Asanachescu's serious medical and mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

> a.      By failing to review Asanachescu's mental health history and/or evaluate Asanachescu in person;
>
> b.      By failing to provide a treatment plan regarding Asanachescu's critical and immediate mental health needs;
>
> c.       By failing to contact a psychiatrist or other qualified mental health professional to provide Asanachescu an immediate psychiatric evaluation;
>
> d.      By failing to arrange for Asanachescu to receive emergency psychiatric medication and/or hospitalization; and
>
> e.      By failing to provide an order, including clinical justification, objective and duration, for Asanachescu's continued restraint in the Pro-Straint chair.

68.     At approximately 7:15 p.m., after Asanachescu had been restrained for eight hours, Sgt. Tangen justified his continued restraint because he was "struggling against restraints," and Asanachescu "[s]tated he knows he's violent now, doesn't know why."

69.     At approximately 7:30 p.m., Sgt. Tangen noted Asanachescu was "calm" and "[r]equested to be removed from chair." Sgt. Tangen "told [Asanachescu] to remain calm and we would be back to remove [you] from chair."

70.     At approximately 8:00 p.m., after Asanachescu had been strapped in the Pro-Straint chair for nine hours, Sgt. Tangen justified Asanachescu's continued restraint, despite his "[d]emanding loudly to be removed from the chair," as "his body language and demeanor showed violence [and] rage."

71.     At approximately 8:30 p.m., after Asanachescu had been strapped in the Pro-Straint chair for nine and one-half hours, Sgt. Tangen drafted a "Written Action Plan," justifying Asanachescu's continued restraint:

COMPLAINT - 26

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

> I have contacted Medical (RN Price) who called (Dr. Randleman)
> the on-call MH provider. He said something to the effect of 'he's
> not my patient' and referred the case to the other MH doctor. That
> doctor is not on call and doesn't take calls (Dr. Douglas). Cheryl,
> the HSA, just called and is working issue with the DON to see
> what can be done. Continued restraint is necessary to prevent
> injury to staff and inmate.

72.     At approximately 8:50 p.m., Asanachescu accepted a dose of the olanzapine that Dr. Douglas had prescribed.

73.     At approximately 8:55 p.m., RN Price noted Asanachescu was "fighting hard against the restraint, urinating on self, verbal speaking 'want out of this chair, I won't harm self...' but is unable to not fight hard against the restraints."

74.     At approximately 9:00 p.m., after Asanachescu had been strapped in the Pro-Straint chair for ten hours, Sgt. Tangen justified Asanachescu's continued restraint, as he "[c]ontinues to struggle against restraints," which "[s]eems to be almost involuntary."

75.     At approximately 10:15 p.m., after Asanachescu had become physically exhausted from eleven hours of struggling against his restraints, Sgt. Tangen released Asanachescu from the chair:

> [W]e found the inmate in a very drowsy state. He did not respond
> to verbal questions, but would look up slowly if his name was
> called. His body twitched against the restraints randomly, but we
> did not see any of the power or determination he was displaying
> before. I judged that it would be safe for staff to remove him from
> the Pro-Straint chair. I told him what we were doing and ordered
> him not to resist. We removed the restraints, he stood (with
> assistance), walked a few steps, then laid down on the floor.

76.     At approximately 10:25 p.m., CCSO Commander Richard Bishop wrote Sgt. Tangen, summarizing ten days of deliberate indifference to Asanachescu's serious medical and mental health needs:

> This email is document our conversation starting at approximately
> 2119 [9:19 p.m.], this date, regarding the above listed inmate
> Asanchescu [sic], Marius CFN 158603. This inmate is described as
> a 29 year old male, approximately 300 pounds, 5'10" in height and
> is currently restrained a pro restraint chair in the intake area.
>
> * * * *
>
> He was booked into the facility on January 30, 2012, but did not
> receive mental health medications until 02/07 by syringe and then
> tonight by oral means (pills). The inmate had been [sic] the pro
> restraint chair for at least 5 hours and he was not calming down

COMPLAINT - 27

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

> sufficiently for you to believe it would be safe to release him from
> the chair. . . . The on call Conmed Psychiatrist, Dr Rindelman
> <spl> was contacted by the duty RN but informed the RN that
> Asanchescu [sic] is not his patient and to call Dr. Douglas. Dr.
> Douglas who is not on call is not answering his phone or messages.
>
> * * * *
>
> In closing, I am sending you the legal definition of deliberate
> indifference, as defined by the court, for reference in the future.

77.     By restraining Asanachescu in the Pro-Straint chair, as described above, Sgt. Tangen was deliberately indifferent to Asanachescu's serious mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

       a.      By failing to obtain the assistance of a qualified mental health professional in dealing with Asanachescu's self-harm behavior and inability to comply with custodial directions;

       b.      By use of the Pro-Straint chair to discipline Asanachescu for failure to comply with custodial direction, rather than limiting its use to immediate prevention of self-harmful behavior;

       c.      By failing to obtain a physician's order for Asanachescu's restraint in the Pro-Straint chair; and

       d.      By failing to develop a plan with medical staff to address Asanachescu's serious mental health needs.

78.     At approximately 11:00 p.m., HSA Taylor telephoned Dr. Gorecki. Dr. Gorecki prescribed Asanachescu 1 - 2 mg Ativan every three hours "while in agitated state." Dr. Gorecki was deliberately indifferent to Asanachescu's serious medical and mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

       a.      By failing to review Asanachescu's mental health history and/or evaluate Asanachescu in person;

       b.      By failing to provide a treatment plan to address Asanachescu's continued self-harm, agitation, and potential danger

COMPLAINT - 28

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

to others;

c.      By failing to consult with a psychiatrist or other qualified

mental health professional regarding Asanachescu's critical and

immediate mental health needs; and

d.      By failing to contact a psychiatrist or other qualified mental

health professional to provide Asanachescu immediate psychiatric

care.

79.     During the evening of February 9, 2012, HSA Taylor and RN Price were deliberately indifferent to Asanachescu's serious mental health needs and contributed to the worsening of his condition and ultimately, tortured death, in one or more of the following particulars:

a.      By failing to arrange for Asanachescu to receive emergency

psychiatric medication and/or hospitalization;

b.      By failing to obtain a physician's order for Asanachescu's

restraint in the Pro-Straint chair; and

c.      By failing to develop a plan with custody staff to address

Asanachescu's serious mental health needs.

**H.      Friday, February 10, 2012 (Further Self-Harmful Behavior; Restraint Asphyxiation)**

80.     On February 10, 2012, from approximately 6:00 a.m. to approximately 8:30 a.m., CO Burns observed Asanachescu in his cell "lying on floor," "sitting at door," standing at door" and "sitting against wall."

81.     At approximately 8:35 a.m., CO Cluzel accompanied licensed practical nurse Aburee Hansen ("RN Hansen") to Asanachescu's cell to administer medication. RN Hansen told Asanachescu she needed to check the dose and returned to the medical unit to verify what medication he was supposed to have. According to RN Hansen, Asanachescu "acted okay," and sat down in his cell.

COMPLAINT - 29

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

82.     When RN Hansen returned to the medical unit she received a call from booking that Asanachescu "did want meds and was hitting his head on the door." CO Burns, who described Asanachescu as an "aggressive, violent, nasty man," went back to his cell and ordered him to stop banging his head immediately, or "this isn't gonna end well for you." According to CO Burns, "you're always lookin around makin sure that nothing is gonna interfere with your normal duties." When Asanachescu did not stop, CO Burns told CO Cluzel, who was on his way to the courthouse, not to go anywhere, "we're gonna have to go in uh, on Asanachescu."

83.     CO Burns called for a sergeant and additional officers to assist him and went to the A-Pod to get the Pro-Straint chair, a pair of "chain style" cuffs for Asanachescu's legs and a pair of handcuffs (instead of the required "chain style" cuffs) for his hands. When CO Burns returned, Sgt. Karlsen and the five other custody officer defendants were assembled outside Asanachescu's cell. Although they had the shield that had been successfully used the day before to remove Asanachescu from the shower, CO Cluzel decided "the shield's not gonna work."

84.     CO Hatcher knew they were going to "go in there and get him." The plan, according to CO Carroll, was "whoever, you know, decides to take lead." According to CO Cluzel, "we . . .made [Sgt. Karlsen] move back," telling him, "why don't you go to the back of the line . . . why don't you watch." CO Black took the lead, firing her Taser at Asanachescu through an opening in the cell door. Then CO Carroll fired his Taser at Asanachescu, followed by CO Black with another round. After two minutes of Taser rounds from CO Black and CO Carroll, Asanachescu was "kind a off balance, kind a dizzy or dazed."

85.     CO Cluzel directed CO Hatcher to quietly open Asanachescu's cell door. CO Carroll rushed in and stiff-armed Asanachescu in the chest, causing him to drop to the ground. CO Carroll fell on top of Asanachescu and turned him onto his stomach, pushed his body against the wall and put one knee on his back and another on his shoulder. CO Hatcher placed his knee across Asanachescu's lower back, while CO Cluzel forced Asanachescu's legs into a figure-four leg lock, crossing his left leg over his right leg and then bending his right leg back over the top of his left leg. CO Carroll ordered Asanachescu to put his hand behind his back and he immediately

COMPLAINT - 30

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

complied. CO Hatcher gained control of Asanachescu's other hand. CO Burns handed CO Carroll and CO Hatcher the "chain style" cuffs to secure Asanachescu's hands.

86.     After the cuffs were in place, Asanachescu continued to move his head and right leg, in an attempt to breathe; because of his mental illness, he could not communicate. In response, CO Carroll turned Asanachescu's head toward the wall to stop it from moving, put his knee in the small of Asanachescu's back and wedged his foot and shin against Asanachescu's side to keep him pressed against the wall. CO Hatcher continued to restrain Asanachescu with his knee across his lower back. CO Cluzel "relocked" Asanachescu's right leg back across his left leg and CO Bjorkman stood on Asanachescu's left shin, to secure his left leg in the figure-four leg lock.

87.     When CO Carroll, CO Hatcher, CO Cluzel and CO Bjorkman had fully restrained Asanachescu face down on the ground, CO Burns left Asanachescu's cell to get another pair of "chain style" cuffs, to secure Asanachescu legs. CO Burns returned with the cuffs and attached one to Asanachescu's right leg, which was bent back in the "figure four" position. When CO Burns ordered Asanachescu to relax his right leg, so he could attach the other cuff, Asanachescu did not respond.

88.     At 8:50 a.m., less than 15 minutes after CO Burns called for backup to intervene to prevent their inmate's self-harmful behavior, Asanchescu was dead.  Asanachescu had been asphyxiated by Sgt. Karlsen's, CO Bjorkman's, CO Black's, CO Burns', CO Carroll's, CO Cluzel's and CO Hatcher's spontaneous and unplanned use of deadly force, employed for the alleged purpose of preventing him from harming himself.

89.     The Clark County Medical Examiner ruled Asanachescu's death a homicide. The cause of death was mechanical asphyxiation due to chest compression and psychosis – the former from the pressure exerted by custody officers, and the latter from Asanachescu's inability to communicate he could not breathe. The Medical Examiner found Asanachescu's obvious truncal obesity further compromised his ability to breathe against chest compression and restraint position.

COMPLAINT - 31

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

90.     In restraining Asanachescu, as described above, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel and CO Hatcher were deliberately indifferent to Asanachescu's serious medical and mental health needs and contributed to his tortured death, in one or more of the following particulars:

      a.     By using a Taser as the primary means to enforce compliance with custodial direction;

      b.     By failing to prepare and/or plan to restrain Asanachescu's wrists and legs quickly, so he could be rolled on his back or side, so his breathing could continue unimpaired;

      c.     By restraining Asanachescu in a figure-four leg lock restraint, unreasonably impairing Asanachescu's ability to inhale and exhale;

      d.     By using their knees to place their weight on Asanachescu's back, inhibiting movement of his diaphragm and rib cage; and

      e.     By failing to monitor Asanachescu's airway, breathing and circulation, while he was being restrained in a prone position.

91.     In restraining Asanachescu, as described above, Sgt. Karlsen was deliberately indifferent to Asanachescu's serious medical and mental health needs and contributed to his tortured death, in one or more of the following particulars:

      a.     By failing to involve medical staff in Asanachescu's restraint;

      b.     By failing to provide a plan for the defendant custody officers to restrain Asanachescu from self-injury, without subjecting him to further injury;

      c.     By failing to have the proper equipment ready and available to properly and effectively effect Asanachescu's restraint;

COMPLAINT - 32

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

d.      By failing to supervise and/or direct the defendant custody

officer's actions in the restraint process; and

e.      By failing to intervene in the defendant custody officer's

use of excessive, brutal and deadly force.

**I.      The Policies, Practices and Customs of Clark County, Conmed, Inc. and Their Respective Officials That at Least in Part Caused Asanachescu's Death**

92.      Prior to January 30, 2012, Clark County, Sheriff Lucas, Chief Webster, other Clark County officials, Conmed, HSA Taylor, Dr. Gorecki and other Conmed officials, knew the critical importance of providing mental health services to individuals in custody. Nevertheless, these defendants did not have the necessary and appropriate policies in place and did not provide the necessary and appropriate training, and as such were deliberately indifferent to the serious medical and mental health needs of inmates, in one or more of the following particulars:

a.      By failing to require a qualified health care professional to perform a mental health screening upon an inmate's admission;

b.      By failing to require a qualified health care professional to review an inmate's prior medical record upon an inmate's admission;

c.      By failing to provide a mental health coordinator to administer and manage mental and behavioral health care operations;

d.      By failing to hire adequate qualified mental health professionals to evaluate and treat inmates with serious mental health needs;

e.      By failing to train custody officers to recognize when an inmate has signs of severe mental illness and the need for referral to a mental health professional for examination and treatment;

f.      By failing to have a medical segregation unit appropriate for inmates suffering from acute mental illness;

COMPLAINT - 33

Baumgartner, Nelson & Wagner, PLLC
112 W 11ᵗʰ St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

g.      By placing inmates suffering from acute mental illness in stark, filthy and foul smelling cells, which are not conducive to treatment;

h.      By failing to require health care personnel to immediately contact a qualified mental health professional when an inmate shows symptoms of acute mental illness;

i.      By failing to require special needs treatment plans for inmates with psychiatric illness, or consultation between the CCJ physician or designee and custody staff regarding appropriate housing, discipline and treatment;

j.      By placing an inmate in a restraint chair in response to symptoms of acute mental illness, without requiring a physician's order or providing psychiatric treatment; and

k.      By failing to have a qualified mental health professional available on a twenty-four (24) hour basis for inmates with emergency psychiatric needs.

93.      As of January 30, 2012, Clark County had written policies or well-established official practices that allowed, encouraged and directed CCJ custody officers to impose punitive disciplinary sanctions on inmates suffering from serious mental illness. Such policies and practices allowed, encouraged and directed its custody officers to impose lockdown on detainees suffering from acute mental illness, in deliberate indifference to the serious medical and mental health needs of these inmates.

94.      Prior to January 30, 2012, Clark County, Sheriff Lucas, Chief Webster, other Clark County officials, Conmed, HSA Taylor, Dr. Gorecki and other Conmed officials, knew the critical importance of providing inmates suffering from acute mental illness or psychological distress with involuntary treatment and hospitalization for the safety of themselves and others. Nevertheless, these defendants did not have the necessary and appropriate policies in place and did not provide the necessary and appropriate training regarding involuntary treatment and

COMPLAINT - 34

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

1    hospitalization and, as such were deliberately indifferent to the serious mental health needs of

2    inmates.

3          95.    Prior to January 30, 2012, Clark County, Sheriff Lucas, Chief Webster, other

4    Clark County officials, Conmed, HSA Taylor, Dr. Gorecki and other Conmed officials, knew the

5    critical importance of communication between community mental health providers and jail

6    mental health staff to maintain continuity of treatment. Nevertheless, these defendants did not

7    have the necessary and appropriate policies in place and did not provide the necessary and

8    appropriate training to allow communication between community mental health providers and

9    jail mental health staff, and as such were deliberately indifferent to the serious mental health

10   needs of inmates.

11         96.    Prior to January 30, 2012, Clark County, Sheriff Lucas, Chief Webster and other

12   Clark County officials knew the critical importance of providing adequate and necessary training

13   in crisis intervention to enable custody officers to appropriately respond to inmates experiencing

14   a mental health crisis involving intensified psychological, emotional and/or mental distress

15   precipitated by situational stress, trauma or an acute episode of a preexisting mental illness.

16   Nevertheless, these defendants did not provide such training and were deliberately indifferent

17   regarding the well-established risk that custody officers would unreasonably escalate situations

18   and cause serious physical injury or death to inmates suffering a mental health crisis.

19         97.    Prior to January 30, 2012, Clark County, Sheriff Lucas, Chief Webster and other

20   Clark County officials knew the critical importance of minimizing the risk of excessive force in

21   cell extractions, including but not limited to the need for supervision, availability and use of

22   proper equipment, use of video tape and presence of qualified medical staff. Nevertheless, these

23   defendants did not have the necessary and appropriate policies in place and did not provide the

24   necessary and appropriate training regarding cell extractions, and as such were deliberately

25   indifferent to the well-established risk that custody officers would cause serious physical injury

26   or death to inmates.

27         98.    As of January 30, 2012, Clark County and the CCSO had written policies that

28   failed to identify and regulate as deadly force restraining an inmate in a prone position with

COMPLAINT - 35

weight on the inmate's neck, back and/or abdomen. Custody officers were allowed, encouraged, and directed to restrain inmates in such a manner, even without a reasonable belief the inmate presented an immediate threat of death or serious injury to said officers. Similarly, Clark County and the CCSO provided training that allowed, encouraged and directed such conduct.

99.     Prior to January 30, 2012, Clark County, Sheriff Lucas, Chief Webster and other Clark County officials knew the critical importance of providing adequate and necessary training regarding restraint, positional and/or mechanical asphyxiation for its custody officers to enable them to restrain inmates with less than deadly force. Nevertheless, these defendants did not provide such training, and as such were deliberately indifferent regarding the known risk its custody officers would asphyxiate inmates to restrain them.

100.     Clark County, Sheriff Lucas and Chief Webster have ratified the conduct of Sgt. Karlsen, CO Burns, CO Cluzel, CO Black, CO Hatcher, CO Carroll and CO Bjorkman related to Asanachescu's homicide, as evidenced by their failure and refusal to discipline the conduct or take any other necessary and appropriate remedial action in response to their conduct.

101.     Clark County, Sheriff Lucas, Chief Webster, Conmed, HSA Taylor and Dr. Gorecki have ratified the respective conduct of their employees and those they supervise, related to the deliberate indifference to Asanachescu's serious medical and mental health needs, as evidenced by the CCJ's policy and/or longstanding practice and custom of deliberate indifference to the serious medical and mental health needs of inmates.

102.     At least in part, one or more policies, official practices, and acts of defendants Clark County and Conmed, and their respective officials, as described above, were a cause of Asanachescu's death.

COMPLAINT - 36

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

## V.  FIRST CLAIM FOR RELIEF

### Section 1983 – 14th Amendment Violation

### (Excessive Force)

103.    As described above, in violation of the Fourteenth Amendment to the United States Constitution, Sgt. Karlsen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel and CO Hatcher:

        a.    Had no lawful or constitutional basis to use deadly, or potentially deadly, physical force to restrain Asanachescu; and

        b.    Had no lawful or constitutional basis to subject Asanachescu to excessive, brutal and deadly physical force, resulting in his wrongful and tortured death.

104.    As described above, defendants' conduct was oppressive and in reckless disregard of plaintiffs' well-established constitutional rights.

105.    As described above and at least in part, one or more of the official policies, practices and/or customs of Clark County and its respective officials, including Sheriff Lucas and Chief Webster, caused, or otherwise makes them liable for violating Asanachescu's rights not to be subjected to excessive force under the Fourteenth Amendment to the United States Constitution.

106.    The ratification of the conduct of their employees and those they supervised, as described above, makes Clark County, Sheriff Lucas and Chief Webster liable for violation of the Fourteenth Amendment described in this claim.

107.    As a result of the above, Asanachescu suffered and endured severe emotional distress, and conscious, severe, physical and mental pain and suffering before he died, and his estate incurred funeral expenses and special damages from his death, for which his estate is entitled to compensatory damages against Clark County, Sheriff Lucas, Chief Webster, Sgt. Karlsen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel and CO Hatcher, in amounts to be determined at trial.

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

108.     As a result of the above, Afrodita Asanachescu and Cristian Asanachescu were deprived of the right of society and companionship of their son, for which they are entitled to compensatory damages against Clark County, Sheriff Lucas, Chief Webster, Sgt. Karlsen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel and CO Hatcher, in amounts to be determined at trial.

109.     As a result of the above, plaintiffs are entitled to an award of punitive damages against Sheriff Lucas, Chief Webster, Sgt. Karlsen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel and CO Hatcher, in amounts to be determined at trial.

110.     Pursuant to 42 USC § 1988, plaintiffs are entitled to an award of costs, attorney fees and expenses against all defendants named in this claim.

## VI.  SECOND CLAIM FOR RELIEF

### Section 1983 – 14th Amendment Violation

### (Unreasonable Denial of Mental Health Care)

111.     As described above, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez unreasonably denied the mental health care to which Asanachescu was entitled under the Fourteenth Amendment to the United States Constitution.

112.     As described above, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez were deliberately indifferent to Asanachescu's serious medical and mental health needs and caused his death, in violation of the Fourteenth Amendment to the United States Constitution.

113.     As described above, defendants' conduct was oppressive and in reckless disregard of plaintiffs' well-established constitutional rights.

114.     As described above and at least in part, one or more of the official policies, practices and/or customs of Clark County and Conmed and their respective officials, including Sheriff Lucas and Chief Webster, HSA Taylor and Dr. Gorecki, were the cause of the unreasonable conduct and/or deliberate indifference to Asanachescu's serious medical and

COMPLAINT - 38

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

1   mental health needs and, ultimately, a cause of his death, in violation of the Fourteenth

2   Amendment to the United States Constitution.

3          115.    The ratification of the conduct of their employees and those they supervised, as

4   described above, makes Clark County, Sheriff Lucas, Chief Webster, Conmed, HSA Taylor and

5   Dr. Gorecki liable for violation of the Fourteenth Amendment described in this claim.

6          116.    As a result of the above, Asanachescu suffered and endured severe emotional

7   distress, and conscious, severe, physical and mental pain and suffering before he died, and his

8   estate incurred funeral expenses and special damages from his death, for which his estate is

9   entitled to compensatory damages against Clark County, Sheriff Lucas, Chief Webster, Sgt.

10  Karlsen, Sgt. Flores, Sgt. Tangen, Conmed, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr.

11  Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA

12  Hernandez in amounts to be determined at trial.

13         117.    As a result of the above, Afrodita Asanachescu and Cristian Asanachescu were

14  deprived of the right of society and companionship of their son, for which they are entitled to

15  compensatory damages against Clark County, Sheriff Lucas, Chief Webster, Sgt. Karlsen, Sgt.

16  Flores, Sgt. Tangen, Conmed, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest,

17  MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez in amounts to be

18  determined at trial.

19         118.    As a result of the above, plaintiffs are entitled to an award of punitive damages

20  against Sheriff Lucas, Chief Webster, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, Conmed, HSA

21  Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk,

22  RN Richards, RN Price and CNA Hernandez, in amounts to be determined at trial.

23         119.    Pursuant to 42 USC § 1988, plaintiffs are entitled to an award of costs, attorney

24  fees and expenses against all defendants named in this claim.

25

26

27

28

COMPLAINT - 39

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

# VII.  THIRD CLAIM FOR RELIEF

## Section 1983 – 14th Amendment Violation

## (Punishment of Detainee)

120.    As described above, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez were deliberately indifferent to Asanachescu's serious medical and mental health needs and caused his death, in violation of the Fourteenth Amendment to the United States Constitution.

121.    As described above, the conduct of Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez inflicted punishment on Asanachescu in violation of the Fourteenth Amendment to the United States Constitution.

122.    As described above, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez violated Asanachescu's Fourteenth Amendment rights because their conduct was unreasonable and/or arbitrary in failing and/or refusing to provide him with treatment for his serious medical and mental health needs.

123.    As described above, defendants' conduct was oppressive and in reckless disregard of plaintiffs' well-established constitutional rights.

124.    As described above and at least in part, one or more of the official policies, practices and/or customs of Clark County and Conmed and their respective officials, including Sheriff Lucas, Chief Webster, HSA Taylor and Dr. Gorecki, were a cause of the deliberate indifference to Asanachescu's serious medical and mental health needs, the failure to provide treatment for Asanachescu's serious medical and mental health needs and the infliction of

COMPLAINT - 40

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

1  punishment, and were a cause of his death, in violation of the Fourteenth Amendment to the

2  United States Constitution.

3          125.    The ratification of the conduct of their employees and those they supervised, as

4  described above, makes Clark County, Sheriff Lucas, Chief Webster, Conmed, HSA Taylor and

5  Dr. Gorecki liable for violation of the Fourteenth Amendment described in this claim.

6          126.    As a result of the above, Asanachescu suffered and endured severe emotional

7  distress, and conscious, severe, physical and mental pain and suffering before he died, and his

8  estate incurred funeral expenses and special damages from his death, for which his estate is

9  entitled to compensatory damages against Clark County, Sheriff Lucas, Chief Webster, Sgt.

10  Karlsen, Sgt. Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel,

11  CO Hatcher, Conmed, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC

12  Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez, in amounts to be

13  determined at trial.

14          127.    As a result of the above, Afrodita Asanachescu and Cristian Asanachescu were

15  deprived of the right of society and companionship of their son, for which they are entitled to

16  compensatory damages against Clark County, Sheriff Lucas, Chief Webster, Sgt. Karlsen, Sgt.

17  Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher,

18  Conmed, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand,

19  DON Leontyuk, RN Richards, RN Price and CNA Hernandez in amounts to be determined at

20  trial.

21          128.    As a result of the above, plaintiffs are entitled to an award of punitive damages

22  against Sheriff Lucas, Chief Webster, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, CO Bjorkman, CO

23  Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher, Conmed, HSA Taylor, Dr. Gorecki, Dr.

24  Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price

25  and CNA Hernandez, in amounts to be determined at trial.

26          129.    Pursuant to 42 USC § 1988, plaintiffs are entitled to an award of costs, attorney

27  fees and expenses against all defendants named in this claim.

28

COMPLAINT - 41

Baumgartner, Nelson & Wagner, PLLC
112 W 11ᵗʰ St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

## VIII.  FOURTH CLAIM FOR RELIEF

### Section 1983 – 14th Amendment Violation

### (Unreasonable Conduct and/or Conduct So Arbitrary it Shocks the Conscience)

130.   As described above, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez violated plaintiffs' Fourteenth Amendment rights because their conduct was unreasonable and/or so arbitrary it shocks the conscience.

131.   As described above, defendants' conduct was oppressive and in reckless disregard of plaintiffs' well-established constitutional rights.

132.   As described above and at least in part, one or more of the official policies, practices and/or customs of Clark County and Conmed and their respective officials, including Sheriff Lucas, Chief Webster, HSA Taylor and Dr. Gorecki, caused, or otherwise make them liable for violation of plaintiffs' Fourteenth Amendment rights.

133.   The ratification of the conduct of their employees and those they supervised, as described above, makes Clark County, Sheriff Lucas, Chief Webster, Conmed, HSA Taylor and Dr. Gorecki liable for violation of the Fourteenth Amendment described in this claim.

134.   As a result of the above, Asanachescu suffered and endured severe emotional distress, and conscious, severe, physical and mental pain and suffering before he died, and his estate incurred funeral expenses and special damages from his death, for which his estate is entitled to compensatory damages against Clark County, Sheriff Lucas, Chief Webster, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher, Conmed, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez, in amounts to be determined at trial.

135.   As a result of the above, Afrodita Asanachescu and Cristian Asanachescu were deprived of the right of society and companionship of their son, for which they are entitled to compensatory damages against Clark County, Sheriff Lucas, Chief Webster, Sgt. Karlsen, Sgt.

COMPLAINT - 42

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher, Conmed, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez in amounts to be determined at trial.

136.   As a result of the above, plaintiffs are entitled to an award of punitive damages against Sheriff Lucas, Chief Webster, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher, Conmed, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez in amounts to be determined at trial.

137.   Pursuant to 42 USC § 1988, plaintiffs are entitled to an award of costs, attorney fees and expenses against all defendants named in this claim.

## IX.  FIFTH CLAIM FOR RELIEF

### Section 1983 – 14th Amendment Violation

### (Deprivation of Equal Protection Rights)

138.   As described above, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez discriminated against or caused the discrimination against Asanachescu because he was mentally ill or perceived to be mentally ill, in violation of the Fourteenth Amendment.

139.   As described above, defendants' conduct was oppressive and in reckless disregard of plaintiffs' well-established constitutional rights.

140.   As described above and at least in part, one or more of the official policies, practices and/or customs of Clark County and Conmed and their respective officials, including Sheriff Lucas, Chief Webster, HSA Taylor and Dr. Gorecki, caused, or otherwise make them liable for violation of plaintiffs' Fourteenth Amendment rights.

141.   The ratification of the conduct of their employees and those they supervised, as described above, makes Clark County, Sheriff Lucas, Chief Webster, Conmed, HSA Taylor and Dr. Gorecki liable for violation of the Fourteenth Amendment described in this claim.

COMPLAINT - 43

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

142. As a result of the above, Asanachescu suffered and endured severe emotional distress, and conscious, severe, physical and mental pain and suffering before he died, and his estate incurred funeral expenses and special damages from his death, for which his estate is entitled to compensatory damages against Clark County, Sheriff Lucas, Chief Webster, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher, Conmed, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez, in amounts to be determined at trial.

143. As a result of the above, Afrodita Asanachescu and Cristian Asanachescu were deprived of the right of society and companionship of their son, for which they are entitled to compensatory damages against Clark County, Sheriff Lucas, Chief Webster, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher, Conmed, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez in amounts to be determined at trial.

144. As a result of the above, plaintiffs are entitled to an award of punitive damages against Sheriff Lucas, Chief Webster, Sgt. Karlsen, Sgt. Flores, Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher, Conmed, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand, DON Leontyuk, RN Richards, RN Price and CNA Hernandez, in amounts to be determined at trial.

145. Pursuant to 42 USC § 1988, plaintiffs are entitled to an award of costs, attorney fees and expenses against all defendants named in this claim.

COMPLAINT - 44

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com

1    WHEREFORE, plaintiffs and each of them request the following relief:

2    1.    Compensatory damages jointly and severally against all defendants in amounts to

3    be determined at trial in accordance with the allegations and claims set forth above;

4    2.    Punitive damages against Sheriff Lucas, Chief Webster, Sgt. Karlsen, Sgt. Flores,

5    Sgt. Tangen, CO Bjorkman, CO Black, CO Burns, CO Carroll, CO Cluzel, CO Hatcher,

6    Conmed, HSA Taylor, Dr. Gorecki, Dr. Douglas, Dr. Rendleman, SW Prest, MHC Weigand,

7    DON Leontyuk, RN Richards, RN Price and CNA Hernandez in amounts to be determined at

8    trial in accordance with the allegations and claims set forth above;

9    3.    An award of costs, expert fees and reasonable attorney fees against all defendants,

10   as provided by law; and

11   4.    For such other and further relief as the court deems just and equitable.

12   DATED: March 25, 2013.

13                          BAUMGARTNER, NELSON & WAGNER, PLLC

14

15                   By: s/ William F. Nelson
                         William F. Nelson, WSBA 1013
16                       Of Attorneys for Plaintiffs

17

18                       DAVID P. MEYER, P.C.

19                   By: s/ David P. Meyer
                         David P. Meyer, WSBA 19643
20                       Of Attorneys for Plaintiffs

21

22

23

24

25

26

27

28

COMPLAINT - 45

Baumgartner, Nelson & Wagner, PLLC
112 W 11th St, Ste 150
Vancouver, WA 98660-3359
Phone: (360) 694-4344
wnelson@bnw-law.com

David P. Meyer, PC
621 SW Morrison St, Ste 900
Portland, OR 97205-3823
Phone: (503) 224-1096
dpmeyer@meyerlaw.com